THE STATE OF MISSOURI to the use of BENJAMIN B. GUTHRIE, Respondent, v. SAMUEL P. MARTIN *et al.*, Appellants.

St. Louis Court of Appeals, January 17, 1893.

1. **Practice, Trial:** LEADING QUESTIONS TO WITNESSES. It is within the discretion of the trial court to permit, or refuse to permit leading questions to be propounded to a witness by the party producing him.

2. **Practice, Appellate:** NON-PREJUDICIAL ERROR. A judgment will not be reversed for non-prejudicial error; accordingly, error in refusing to permit a witness to testify whether a designated person had procured a judgment against him is not ground for reversal, since record proof of the judgment, if there was one, might have been produced.

*Appeal from the Mississippi Circuit Court.*—HON. H. C. O'BRYAN, Judge.

AFFIRMED.

*J. J. Russell*, for appellants.

*Boone & Elliott*, for respondent.

BIGGS, J.—This is an action on an indemnifying bond. The defendant, A. P. Martin, obtained a judgment against C. J. Hubbard and C. T. Schultz. An execution was issued on this judgment, and under the directions of Martin the sheriff levied upon an undivided one-half interest in a sawmill as the property of. Hubbard. The relator claimed the property under the statute, and the bond in suit was given. The interest in the property levied upon was afterwards sold, and the proceeds applied to the satisfaction of the execution. The answer denied title in the relator, and averred that the undivided interest levied upon belonged to Hubbard, and that the pretended ownership of the relator was a mere cover to shield the property from Hubbard's creditors. There was a judgment in the relator's favor for $450, and the defendants have appealed, and complain of the action of the court in rejecting competent and relevant testimony offered by them, and also in giving and refusing instructions.

It seems to have been conceded that, at the time of the levy, the relator and one Irwin were in possession of and were operating the mill, claiming an equal ownership. The relator's evidence tended to show that he and Hubbard bought the mill together, each purchasing one-half interest; that the bulk of the purchase money was paid by Hubbard, but that the amount paid by him in excess of one-half had been refunded by the relator, except about $90, which he still owed; that

afterwards, but prior to the levy, Hubbard had sold his undivided one-half interest to Irwin, and that the entire property was worth between $800 and $1,000. On the other hand, the defendants' evidence tended to show the insolvency of Hubbard, and also a course of dealing between him and the relator from which the alleged fraud could reasonably have been inferred. But the jury found to the contrary, and the judgment thereon cannot be disturbed unless error intervened at the trial.

The defendants introduced Hubbard as a witness and propounded to him leading questions, which the court on objections of the relator ruled out as improper. It was within the discretion of the court either to deny or permit the questions to be asked, and the exercise of this discretion cannot be assigned for error. This is well settled by the decisions in this state. *King v. Mittalberger*, 50 Mo. 182; *St. L. & I. M. Ry. Co. v. Silver*, 56 Mo. 265; *Wilbur v. Johnson*, 58 Mo. 600; *Meyer v. Railroad*, 43 Mo. 523. Neither was it permissible for the defendants to impeach Hubbard, as they attempted to do, in the absence of evidence tending to show that they were entrapped into offering him as a witness. *Dunn v. Dunnaker*, 87 Mo 597.

Hubbard was asked this question: " 'Did Mrs. Liggan have a judgment against you?" The court ruled the question out as leading. The witness had previously testified that there were a number of judgments against him, but he was unable to give the names of the parties in whose favor they had been rendered. We can see no reason why the question should not have been answered, but we cannot reverse the judgment for such a technical error. If there was any such judgment, it was a matter of record which the defendants might have produced, if they deemed its proof a matter of importance.

The court of its own motion gave instructions as follows: "1. You are instructed, gentlemen of the jury, that, if you believe from the evidence that the one-half interest in the mill and appurtenances sold by the sheriff on execution in case of S. P. Martin v. Hubbard & Schultz was the property of B. B. Guthrie, and shall further believe that B. B. Guthrie made claim to said property to the sheriff on the levy of said property by the sheriff, and that S. P. Martin and Whitfield Anthony executed and delivered to the sheriff the bond sued upon to indemnify B. B. Guthrie and others for any damages or injury that they might sustain by reason of the sale of said property by the sheriff, and that thereupon the sheriff sold said interest in the mill property, then you should find for the plaintiff, and assess his damages at such sum as you may believe the one-half of the property was worth, not exceeding the sum of $500.

"2. Though you may believe in other transactions Guthrie had controlled and had title to Hubbard's property with intent to cover the same and defeat creditors in their demands, yet, if you believe his claim to the property in controversy is in good faith, based upon a valuable consideration, then his claim is not fraudulent, and he should recover if you so find the facts.

"3. Though you believe that Guthrie has not yet paid the full half of the purchase price for the mill and the expense in putting up the same in running order, and that he may be indebted to Hubbard for a part of said one-half interest, yet, if you believe from the testimony, that the purchase and ownership of Guthrie is in good faith, and that he has paid part of the purchase price for the one-half interest in good faith, then you should find the issues for the plaintiff.

"4. If you believe that the claim of Guthrie to the one-half of the mill sold by the sheriff is a pretended and not a real ownership, and that said mill in

reality belonged to Hubbard, then you should find for the defendant.

"5. If you believe from the evidence that the claim of Guthrie to the one-half interest in the mill was simply a cover to conceal a secret trust for the benefit of Hubbard, then your verdict should be for the defendant.

"6. In determining whether the claim of Guthrie to the one-half of the mill is in good faith or not, or whether said claim was merely a cover to conceal a secret trust for Hubbard's benefit, you may consider the previous, contemporaneous and subsequent course of dealing between Guthrie and Hubbard in connection with the other evidence relating to the purchase and management of the mill by Guthrie.

"7. The court instructs you that, if you believe any witness wilfully swore falsely in this cause to any material matter, you may disregard the entire testimony of such witness.

"8. The court instructs the jury that, in determining the credit to be given to the testimony of witnesses in the cause, they may take into consideration the fact that such witness is a party to the suit or is interested in the result of the litigation."

These instructions presented the issues fully and fairly, and those asked by the defendants and refused by the court would not have thrown any additional light on the questions at issue, or in anywise aided the jury in their solution. We deem it proper, however, to notice briefly the defendants' instruction as to the measure of damages, which the court refused to give. It will be observed that the instructions of the court directed a finding for the value of one-half of the mill, in case the verdict was for the relator. The defendants asked the following instruction: "The court instructs you that, if you should believe from the evidence that

the plaintiff had any interest in said sawmill, you should only find for him in such sum as you believe his interest that he owned at the time of the seizure and sale was reasonably worth, together with such damages as you may think him entitled to under the instructions of this court."

This instruction was predicated on the testimony of one of the relator's witnesses, who testified on cross-examination that, on the day of the sale, the relator stated that he only had $265 in the mill, or a working interest in it of that amount. This at most amounted to a statement that the relator had invested, either in money or money's worth, that amount in the purchase of the mill. There is nothing in the testimony of the witness to indicate that the interest claimed by the relator was less than an undivided one-half, concerning which there was no conflict in the other evidence. Besides it was the theory of Martin that the interest claimed by Guthrie was an undivided one-half, and that such interest in fact belonged to Hubbard, and the levy and sale were made accordingly. We are, therefore, of opinion that the instruction was properly refused.

Fnding no error in the record the judgment of the circuit court will be affirmed. All the judges concur.